# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-2649

**ADVANCED CANNABIS SOLUTIONS, INC.,**

    Plaintiff,

v.

**STEPHEN G. CALANDRELLA,**

    Defendant.

## COMPLAINT

Plaintiff Advanced Cannabis Solutions, Inc., by and through its undersigned attorneys, as and for its Complaint against Defendant Stephen G. Calandrella, states and alleges as follows:

### NATURE OF ACTION

1. Advanced Cannabis Solutions, Inc. ("ACS," the "Company," or "Plaintiff") brings this action under section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b), against Stephen G. Calandrella ("Calandrella" or "Defendant") in order to recover the profits Calandrella obtained through short-swing trading in ACS stock. Such profits, which Defendant obtained unlawfully, are rightfully owed to the Company.

2. Through shares of ACS stock that he held in his own name and shares held by an investment fund that he controlled, Defendant became a beneficial owner of more than 10% of the Company's stock. Calandrella, however, failed to report all of his holdings to the Company. Instead, he engaged in a series of purchases and sales of ACS stock within a six month period in

violation of section 16(b) of the Exchange Act.

3.   The purpose of section 16(b) is to deter insider short-swing trading. It is a strict liability rule. Under section 16(b), a principal stockholder – *i.e.*, a beneficial owner of more than 10% of the Company's stock – must disgorge "any profit realized . . . from any purchase and sale, or any sale and purchase, . . . within any period of less than six months." 15 U.S.C. §78p(b).

4.   Because Defendant was a beneficial owner of more than 10% of the Company's stock, and because several of his purchases and sales in ACS stock occurred within a period of less than six months, he is subject to section 16(b) and therefore must return to the Company his profits on such trades with interest.

## RELEVANT ENTITIES AND INDIVIDUALS

5.   Plaintiff Advanced Cannabis Solutions, Inc. is a corporation organized under the laws of Colorado, and has a principal place of business in Colorado. ACS' common stock is registered under section 12 of the Securities Act of 1933 ("Securities Act") and, until March 27, 2014, was actively traded under the symbol "CANN" on the NASDAQ OTC markets.

6.   Defendant Stephen G. Calandrella is an individual residing, upon information and belief, in Colorado. Calandrella is alleged herein to have been a principal stockholder of ACS for purposes of section 16(b). Calandrella was also an officer, director, and significant shareholder of The Rockies Fund, Inc.

7.   The Rockies Fund, Inc. is a corporation organized under the laws of Nevada, and has a principal place of business in Colorado. The Rockies Fund is Calandrella's personal investment vehicle. At all relevant times, Calandrella directed the activities of The Rockies

Fund, serving as its president and one of its directors. He also owned approximately one-third of its shares.

## JURISDICTION AND VENUE

8. This action arises under section 16 of the Exchange Act, 15 U.S.C. § 78p, and jurisdiction is conferred on this court by section 27 of the Exchange Act, 15 U.S.C. § 78aa.

9. Venue is proper pursuant to 15 U.S.C. § 78aa because the violations of section 16 alleged herein occurred in Colorado, because Calandrella regularly transacts business in Colorado as an officer, director, and shareholder of The Rockies Fund, and because, upon information and belief, Calandrella is a resident of Colorado.

## FACTUAL ALLEGATIONS

**I.   Defendant Acquires ACS Stock Through the Company's Initial Capital Raise and Subsequent Merger**

10. In June 2013, through the Company's initial capital raise, Calandrella and The Rockies Fund each received 600,000 shares of ACS stock.

11. On July 15, 2013, ACS signed a letter of intent to enter into a share exchange transaction with Promap Corporation ("Promap"), a publicly-listed business.

12. In the planned transaction, Promap would acquire ACS stock in exchange for issuing new Promap shares. ACS would thereby become a subsidiary of Promap. Subsequently, Promap would be renamed ACS, and the entities would merge, leaving ACS as the surviving entity.

13. ACS' shareholders, including Calandrella, voted in favor of the transaction.

14. On or about August 14, 2013, the transaction closed, and ACS' stockholders exchanged their shares for newly-issued Promap restricted shares. Calandrella and The Rockies

3

Fund each exchanged their 600,000 shares of ACS stock for 600,000 restricted shares of Promap stock.

15.   Based on the shares of ACS stock he held personally and the shares held by The Rockies Fund, which he controlled, Calandrella had a beneficial ownership interest in 1.2 million shares of ACS stock, which represented approximately 8.7% of the Company's total shares outstanding.

## II.   Defendant Begins Buying and Selling ACS Stock

16.   Just two days after the transaction, Calandrella engaged in a series of trades in ACS stock. Those trades are detailed below.

| Date | Trade | Shares | ACS Total Shares Outstanding | Pre-Trade % Ownership | Post-Trade % Ownership |
|---|---|---|---|---|---|
| 8/16/2013 | Purchase | 5,000 | 13,824,200 | 8.7% | 8.7% |
| 8/19/2013 | Purchase | 200,000 | 13,824,200 | 8.7% | 10.2% |
| 8/19/2013 | Purchase | 240,000 | 13,824,200 | 10.2% | 11.9% |
| 8/19/2013 | Purchase | 45,000 | 13,824,200 | 11.9% | 12.2% |
| 8/20/2013 | Purchase | 30,000 | 13,824,200 | 12.2% | 12.4% |
| 8/20/2013 | Purchase | 15,000 | 13,824,200 | 12.4% | 12.6% |
| 8/21/2013 | Purchase | 60,000 | 13,824,200 | 12.6% | 13.0% |
| 8/26/2013 | Sale | (250,000) | 13,824,200 | 13.0% | 11.2% |
| 1/7/2014 | Sale | (345,000) | 13,387,200 | 11.5% | 9.0% |
| 1/13/2014 | Purchase | 200,000 | 13,387,200 | 9.0% | 10.5% |
| 1/13/2014 | Purchase | 60,000 | 13,387,200 | 10.5% | 10.9% |
| 1/13/2014 | Purchase | 15,000 | 13,387,200 | 10.9% | 11.0% |
| 1/16/2014 | Sale | (275,000) | 13,387,200 | 11.0% | 9.0% |

17.   Calandrella's purchases on August 16 and August 19, 2013, increased his ownership stake in the Company to 10.2%. As a result, Calandrella became subject to section 16 as a beneficial owner of more than 10% of the Company's stock, and his subsequent purchases and sales which occurred in a period of less than six months – as highlighted in the above chart –

violate section 16(b).

18.     Calandrella did not report his holdings of ACS stock to the Company (either the shares he held in his own name or through The Rockies Fund), and he did not inform the Company about changes to such holdings.

### III.    The Investigations into Defendant's Activities

19.     In or around March 2014, the U.S. Securities and Exchange Commission ("SEC") temporarily suspended trading in ACS stock. As a result of that suspension, ACS was delisted from the OTC markets. The Company's stock therefore was and continues to be relegated to the "grey market," which has limited liquidity and is disfavored by investors. In attempting to get relisted, the Company learned that Calandrella's conduct was a subject of the regulatory action that led to the temporary suspension and subsequent delisting of ACS stock.

20.     In response to the regulatory action, ACS began its own investigation into Calandrella's conduct. Only then did the Company discover the extent of Calandrella's unlawful trading in ACS stock.

21.     As outlined in the above charts, several of Calandrella's purchases and sales of the Company's stock occurred when he was a principal stockholder (a beneficial owner of more than 10% of ACS stock) and within a period of less than six months. Thus, pursuant to section 16(b), Defendant must return to ACS his unlawful profits from those trades with interest.

### COUNT ONE
### Violation of Section 16(b)

22.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 21 above as though set forth fully herein.

23.     As a beneficial owner of more than 10% of a class of equity securities registered

pursuant to section 12, Defendant is subject to liability for short-swing profits in violation of section 16(b), 15 U.S.C. § 78p(b).

24. For purposes of section 16(b), Calandrella was the beneficial owner of any ACS shares in which he "directly or indirectly" had "voting power" or "investment power." 17 C.F.R. § 240.13d-3. Thus, in addition to the ACS shares which Calandrella held personally, Defendant was a beneficial owner of the ACS shares held by The Rockies Fund – since Calandrella was its president, one of its directors, an owner of one-third of its shares, and directed its activities.

25. Defendant made several purchases and sales of ACS stock, as highlighted below, while he was a beneficial owner of more than 10% of the Company's stock.

| Date | Trade | Shares | ACS Total Shares Outstanding | Pre-Trade % Ownership | Post-Trade % Ownership |
|---|---|---|---|---|---|
| Defendant's Initial Holdings | | 1,200,000 | 13,824,200 | 8.7% | 8.7% |
| 8/16/2013 | Purchase | 5,000 | 13,824,200 | 8.7% | 8.7% |
| 8/19/2013 | Purchase | 200,000 | 13,824,200 | 8.7% | 10.2% |
| 8/19/2013 | Purchase | 240,000 | 13,824,200 | 10.2% | 11.9% |
| 8/19/2013 | Purchase | 45,000 | 13,824,200 | 11.9% | 12.2% |
| 8/20/2013 | Purchase | 30,000 | 13,824,200 | 12.2% | 12.4% |
| 8/20/2013 | Purchase | 15,000 | 13,824,200 | 12.4% | 12.6% |
| 8/21/2013 | Purchase | 60,000 | 13,824,200 | 12.6% | 13.0% |
| 8/26/2013 | Sale | (250,000) | 13,824,200 | 13.0% | 11.2% |
| 1/7/2014 | Sale | (345,000) | 13,387,200 | 11.5% | 9.0% |
| 1/13/2014 | Purchase | 200,000 | 13,387,200 | 9.0% | 10.5% |
| 1/13/2014 | Purchase | 60,000 | 13,387,200 | 10.5% | 10.9% |
| 1/13/2014 | Purchase | 15,000 | 13,387,200 | 10.9% | 11.0% |
| 1/16/2014 | Sale | (275,000) | 13,387,200 | 11.0% | 9.0% |

26. Defendant's highlighted purchases and sales of ACS stock occurred during a period of less than six months and therefore violate section 16(b), 15 U.S.C. § 78p(b).

27. Calandrella must therefore disgorge to ACS all profits, with interest, from these short-swing transactions, in amounts to be proven at trial pursuant to the "lowest price in, highest

6

price out" method.

## PRAYER FOR RELIEF

WHEREFORE, judgment should be entered in favor of Plaintiff and against Defendant for the following forms of relief:

(a) judgment against Defendant for all profits from short-swing transactions under section 16(b) of the Exchange Act, 15 U.S.C. § 78p(b), in amounts to be proven at trial;

(b) an award of pre-judgment and post-judgment interest on all amounts awarded or restitution or disgorgement ordered;

(c) an award of costs and attorneys' fees against Defendant; and

(d) such other and further relief that this Court deems just and equitable.

DATED:     September 25, 2014

                                                */s/  Andrew R. Shoemaker*

**Andrew R. Shoemaker**
**Jennifer K. Birlem**
SHOEMAKER GHISELLI + SCHWARTZ LLC
1811 Pearl Street
Boulder, Colorado  80302
Telephone:  (303) 530-3452
FAX:  (303) 530-4071
E-mail:  ashoemaker@sgslitigation.com
E-mail:  jbirlem@sgslitigation.com

**Justin V. Shur** (D. Colo bar application forthcoming)
MOLO LAMKEN LLP
540 Madison Avenue
New York, New York 10022
Telephone:  (212) 607-8160

*Attorneys for Plaintiff Advanced Cannabis Solutions, Inc.*